## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re:<br>Michael O. Kesler,<br><br>    Debtor. | In Proceedings<br>Under Chapter 7<br><br>Case No. 08-60299 |
| Indiana/Kentucky Regional<br>Council of Carpenters Joint<br>Apprenticeship and Training<br>Committee,<br><br>    Plaintiff,<br><br>v.<br><br>Michael O. Kesler,<br><br>    Defendant. | Adv. No. 08-6022 |

### Opinion

This matter comes before the Court on the plaintiff's Complaint for Determination Excepting Debt from Dischargeability. The issue before the Court is whether educational assistance, received by the defendant from the plaintiff, qualifies as an educational loan and, therefore, is exempt from discharge pursuant to 11 U.S.C. § 523(a)(8)(A).

The parties have stipulated to the following facts. The plaintiff, Indiana/Kentucky Regional Council of Carpenters Joint Apprenticeship and Training Committee (the "JATC"), is a multi-employer apprenticeship and training trust fund. The JATC is a tax-exempt, not-for-profit organization. It is funded primarily through contributions by employers who are signatories to collective bargaining agreements requiring them to make contributions to the JATC on behalf of employees covered by the agreements.

1

The debtor/defendant, Michael O. Kesler, was an apprentice from 1996 to 2000 in a program operated by the Central Indiana District Counsel of Carpenters Joint Apprenticeship and Training Fund. This organization was a predecessor to the JATC. The debtor entered into five apprenticeship loan agreements with the JATC. In exchange for signing these agreements, the debtor received carpentry training from the JATC through both classroom teaching and field work.

The apprenticeship loan agreements provided that the debtor would have an obligation to repay the cost of his training to the JATC in one of three ways. First, the debtor could repay the loan through in-kind credits earned by working for an employer signatory to a collective bargaining agreement binding the employer to make contributions to the JATC or to another apprenticeship and training program. Second, the debtor could repay the loans in cash if he obtained employment in the carpentry industry with a non-signatory employer. Obtaining such employment, however, was a breach of the agreement and triggered an acceleration clause making all amounts due and owing immediately payable. Finally, the debtor could repay the loans through a combination of in-kind credits and cash payments. While not explicitly stated in the agreements, the plaintiff's brief implies that if the debtor accepted employment outside of the carpentry field, the JATC would waive his repayment obligation.

The debtor never earned the in-kind credits because he breached the apprenticeship loan agreements by accepting employment within the carpenter's industry with a non-signatory employer. After learning of the debtor's breach of the apprenticeship loan agreements, the JATC demanded repayment. The debtor failed to repay the funds and the JATC filed suit against him in the Marion Superior Court in

Indiana seeking repayment of all amounts, including interest, costs and attorneys' fees. On November 15, 2006, a default judgment was entered against the debtor and in favor of the JATC in the amount of $29,118.18. Following entry of the judgment, the debtor paid $1,800 to the JATC toward the judgment. On June 4, 2008, the debtor filed his Chapter 7 Petition. The debtor has listed the judgment owed to JATC as an unsecured debt in this case.

The debtor makes two arguments to support his position that the debt should be discharged. First, he challenges the state court judgment by arguing that the Employee Retirement Income Security Act ("ERISA") prevents the JATC from seeking monetary damages of this nature from the debtor. Second, the debtor contends that § 523(a)(8)(A) does not apply as the agreements between the debtor and the JATC are not educational loans within the meaning of the statute.

The JATC counters that the debtor is estopped from raising any defenses to the underlying judgment that he failed to raise in the state court proceeding, that the debt may not be discharged because it fits within the statutory definition of an educational loan made under a program funded by a non-profit institution, and that the debtor has not demonstrated undue hardship to himself or his dependents.

The Court will address the debtor's attack on the state court judgment before turning to the dischargeability issues. The debtor argues that the JATC is not entitled to monetary damages because arrangements such as these are "welfare benefit plans" under ERISA. Therefore, the law limits the recovery that can be had to equitable remedies. The plaintiff argues that the debtor's argument is barred by *res judicata* as the debtor had

the opportunity to raise this argument in the underlying state litigation and chose not to do so.

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). The statute provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Section 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. *Kremer v. Chemical Const. Corp.* 456 U.S. 461, 481-82 (1982) (quoting *McElmoyle v. Cohen*, 10 L.Ed. 177 (1839)). Rather, the statute commands a federal court to accept the rules chosen by the state from which the judgment is taken. *Id*.

In Indiana, four requirements must be satisfied for a claim to be precluded under *res judicata*. The former judgment must have been rendered by a court of competent jurisdiction; the former judgment must have been rendered on the merits; the matter now in issue was, or could have been, determined in the prior action; and the controversy adjudicated in the former action must have been between parties to the present suit or their privies. *Marsh v. Paternity of Rodgers by Rodgers*, 659 N.E.2d 171, 173 (Ind. Ct. App. 1995).

Here, all four elements of the test are met. First, as the claim arose in Indiana, concerning a contract signed in Indiana, the Marion Superior Court was a court of competent jurisdiction. Second, the former judgment was rendered on the merits. "A default judgment is a judgment on the merits for purposes of *res judicata*." *Eichenberger*

*v. Eichenberger*, 743 N.E.2d 370, 374 (Ind. Ct. App. 2001). Third, the defense which the debtor now asserts could have been raised in the state court action. As the plaintiff argues, federal preemption to a state court claim is an affirmative defense upon which the defendants bear the burden of proof. *Fifth Third Bank ex rel. Trust Officer v. CSX Corp.* 415 F.3d 741, 745 (7th Cir. 2005). Finally, the parties in the present action are the same as those in the former state court action. The debtor's ERISA defense is therefore barred by *res judicata*.

The Court now turns to the issue of whether the judgment is excepted from discharge pursuant to 11 U.S.C. § 523(a)(8)(A) as the JATC argues. This section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> …
>
> (8) unless excepting such debt from discharge under this paragraph would impose undue hardship on the debtor and the debtor's dependents, for –
>
> > (A)(i) An educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend….

The Plaintiff relies on two cases, *In re Rosen*, 179 B.R. 935 (Bankr. D. Oregon 1995) and *In re Dressel*, 212 B.R. 611 (Bankr. E.D. Mo. 1997), in support of its argument that the scholarship loan agreements meet the definition of educational loans under § 523(a)(8). In *Rosen*, the debtor/defendant accepted a Scholarship Loan Agreement with a local union. 179 B.R. at 937. The agreement provided that loan could be repaid in cash

5

or by in-kind credits. *Id*. The agreement further provided that if the debtor worked as a non-union plumber he would be in breach of the agreement and all amounts due and owing on the loan would be immediately due. *Id*. The debtor was terminated from the apprenticeship training and subsequently became employed as an apprentice plumber with a non-union employer. *Id*. The union sued for breach of the agreement and obtained a judgment against the debtor for $3,357.44. *Id*.

The *Rosen* court noted that the language of § 523(a)(8) referring to educational obligations was not limited to obligations for education received at institutions of higher education, and that the purpose of the nondischargeability provision was to preserve the solvency of student loan programs so that funds would be available for future students. *Id*. at 538. The court found that as Mr. Rosen's obligation under the agreement reflected the cost of his training, it was an educational obligation within the scope of § 523(a)(8). Similarly, the purpose of § 523(a)(8), in preserving the solvency of student loan programs, was applicable to the apprenticeship program. In its finding that the agreements in question were educational loans under § 523(a)(8), the *Rosen* court stated that

> most courts that have examined the language under § 523(a)(8) have broadly interpreted 'loan' to include extension of credit for tuition and not to require the delivery of a sum of money…According to the Scholarship Loan Agreement the plaintiff extended credit…to pay for the cost of the training program. The debtor acknowledged the money owed and received training by agreeing to pay the specified amount.

179 B.R. 940-41.

The *Dressel* court, faced with virtually identical facts, agreed with the reasoning of the *Rosen* court. The court noted that Mr. Dressel obtained loans that allowed him to participate in the apprenticeship program where he learned the skills necessary to be a

sheet metal worker. 212 B.R. at 615. Also, as in *Rosen*, the court noted that the apprenticeship loan program was self-funded and self-perpetuating and, therefore, fit the purpose of § 523(a)(8) in preserving those programs. *Id*. The court concluded that the loans the debtor incurred to participate in the apprenticeship program were educational loans within the meaning of § 523(a)(8). *Id*.

The debtor argues that the five educational loan agreements he signed do not qualify as educational loans under § 523(a)(8)(A). The debtor relies exclusively on *In re Rezendes*, 324 B.R. 689 (N.D. Ind. 2004), to support this assertion. The facts of *Rezendes* mirror those of the instant case. Mr. Rezendes signed three loan agreements with his creditor JATC. *Id*. at 691. The agreements provided that the JATC would pay the expense of educating him as a plumber and pipefitter. *Id*. In exchange, he agreed to work for an employer who was a signatory to the JATC agreement. *Id*. He could also breach the agreement by working for a non-signatory plumbing and pipefitting employer, thereby incurring liability to pay for his own education. *Id*. Finally, Mr. Rezendes could have sought work outside the field of plumbing and pipefitting and incurred no liability. *Id*. Mr. Rezendes sought work with a non-signatory plumbing and pipefitting employer and incurred liability for his education expenses. *Id*. The JATC obtained a judgment against him in state court in the amount of $6,254.60 and he subsequently filed for bankruptcy relief. *Id*.

The District Court, in affirming the Bankruptcy Court's decision that the agreement between the parties did not constitute a loan within the definition of § 523(a)(8), noted that "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *Id.* at 692 (quoting *In re Morris*, 223 F.3d

548, 552 (7th Cir. 2000)). Therefore, the court was compelled to strictly construe the discharge exceptions of § 523, using only the plain meaning of the statute. *Id*. The court examined the agreements between Mr. Rezendes and the JATC and concluded that the agreements did not create an obligation to repay. *Id*. at 694. Therefore, no loan existed within the plain meaning of the statute. The court based its decision on the definition of a loan articulated in the case of *In re Chambers,* 348 F.3d 650 (7th Cir. 2003).

In *Chambers*, the debtor was a student at the University of Illinois at Chicago (UIC). 348 F.3d at 652. While attending the school, the debtor incurred tuition and related fees under an open student account. *Id*. After declaring bankruptcy and receiving her discharge, the debtor sought declaratory relief that the debt owed to UIC did not qualify as an educational loan excepted from discharge under § 523(a)(8). *Id*. The bankruptcy court declared the debt discharged. *Id*. at 653. The District Court affirmed this decision. *Id*.

The 7th Circuit held that the extension of credit by an educational institution only falls within the definition of loan under two circumstances: first, when money changes hands; and second, when there is an agreement prior to or simultaneous with the educational services by which the institution extends credit. *Id*. at 657. "The existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan from a mere unpaid debt." *Id*.

In holding that no loan existed, the 7th Circuit noted that no funds changed hands between the debtor and UIC. Nor was there any evidence of a prior or contemporaneous agreement to pay tuition at a later date in exchange for an extension of credit. *Id*. at 657. Instead, the debtor incurred the debt on an open student account, was permitted to attend

classes at UIC despite the debt, and failed to pay her bill. *Id*. The Court held that awareness of the debt and class attendance were insufficient evidence that a separate agreement to create a loan existed. *Id*. The court stated that its decision did not leave educational institutions without the ability to protect their financial relationships with their students noting that "a separate agreement to accept later payment would create a loan and would be excepted from discharge under § 523(a)(8)." *Id*.

Applying the test outlined in *Chambers*, the *Rezendes* court found that no funds changed hands so the agreements could not be considered loans on that basis. As to whether there was evidence of a prior or contemporaneous agreement to pay tuition at a later date in exchange for an extension of credit, the Court concluded that the obligation to repay did not arise out of the agreements between the debtor and the JATC but, rather, only arose when Mr. Rezendes entered into the trade after completing his education. 324 B.R. at 694. The Court reasoned that the agreements signed by the debtor and the JATC contained an agreement to provide training as well as an agreement to pay. *Id*. at 695. The agreement to pay, however, was found to be contingent on how the training was used by Mr. Rezendes in the future and not on the fact that the training had been provided. *Id*. "As there was no defined obligation to repay at the time the agreement was entered into, it is impossible to find that the intent of the parties at the time of the agreement was to enter into a loan agreement with one another." *Id*.

The *Rezendes* court held that due to the possibility that Mr. Rezendes could accept employment outside of the field and have his obligation to repay waived, the purpose of the JATC program was not to provide participants with an educational loan, but rather to provide trained individuals as employees of signatory union contractors in the

9

plumbing/pipe fitting industry. 324 B.R. at 695. It went on to distinguish both *In re Rosen* and *In re Dressel* on this basis. *Id.* at 696. In neither case was the debtor given the option of accepting employment outside of his field of training and, as a result, having his obligation to repay the loans waived.[1]

This Court disagrees with the rationale of *Rezendes* because the *Rezendes* court misapplied the *Chambers* court's definition of educational loan given the facts before it. And, because the facts of *Rezendes* are virtually identical to those of the instant case, this Court rejects the guidance offered by *Rezendes* in reaching its decision today. Rather, in applying the definition of an educational loan enunciated by *Chambers* to the facts of this case, this Court finds that the loans at issue meet the *Chambers* criteria.

First, in the instant case, there can be no dispute that a contemporaneous agreement existed. The presence of written and signed loan agreements between the debtor and the creditor is in stark contrast with the facts of *Chambers*. In *Chambers*, there was no written or oral agreement between the student and the university. Rather, the student/debtor's only affirmative action was to continue attending school while failing to pay tuition—a situation tolerated by the university for some period of time. Here, however, as a condition of receiving training, the debtor affirmatively signed a loan

---

[1] The instant debtor also relies on a paragraph in the *Rezendes* decision where the court analyzed the union's insistence that a "breach" of the agreement occurred and triggered the obligation to repay. The court found that "if the obligation to repay arose from a loan, then there could be no breach save for the lack of payment." 324 B.R. at 695. The court used this point to buttress its finding that there was no agreement between the parties and no obligation to repay. *Id.* The debtor has provided no argument to explain how the *Rezendes* court's reasoning on this point applies to the instant case. Moreover, for the reasons set forth below, the Court has found that an agreement does exist in this case.

agreement five times over five years. Each of these agreements contained the same language evidencing that a loan existed between the debtor and the JATC:

> The Apprentice further understands that these considerable expenditures will be repaid to The Fund by the Apprentice working in the carpenters industry resulting in contributions being made to The Fund pursuant to Collective Bargaining Agreements.
>
> Exhibit A-E, Page 1.

and

> Repayment of Scholarship Loans: The Scholarship Loan may be repaid by the Apprentice in full either in cash, or by in-kind credits, as set forth in Paragraph 8 hereof.
>
> Exhibit A-E, Page 2.

The language quoted above shows that an agreement to repay existed between the debtor and the creditor that was "prior to or simultaneous with the educational services by which the institution extend[ed] credit." *Chambers*, 348 F.3d at 657.

Second, the agreements signed by the debtor in the instant case evidenced an obligation to repay. The agreements specified that the debtor could repay the obligation in either cash or by in-kind credits when the debtor became employed by a signatory to the JATC contract. (Exhibit A-E, Page 2). If the debtor breached the loan agreement by accepting employment within the carpenter's industry with a non-signatory employer, all amounts due and owing became immediately due. *Id*. While not explicitly stated in the agreements, the creditor's brief implies that the obligation to repay was waived in the event that the debtor accepted work outside the carpentry field. Even if the creditor agreed to waive the repayment of the loan in those circumstances, this does not negate the fact that there was an obligation to repay on the part of the debtor if those circumstances did not transpire. *See Hastetter v. Fetter Properties, LLC*, 873 N.E.2d 679, 684 (Ind. Ct.

11

App. 2007) ("a party may waive a contract provision that inures to his or her benefit.") The contract, though conditional, is still valid. The JATC's waiving of its right to repayment under certain conditions does not diminish the debtor's obligation to repay if those conditions are not present.

The Court finds that an educational loan agreement existed between the debtor and the creditor under § 523(a)(8)(a). Accordingly, the debtor cannot discharge the student loans in bankruptcy unless he shows that paying on the loans would cause "undue hardship." *In re O'Hearn*, 339 F.3d 559, 564 (7th Cir. 2003). The debtor has not raised the argument that paying the loans would cause undue hardship to him or his dependents.

For the reasons stated, the Court finds that the debt owed by the debtor, Michael O. Kesler, to the creditor, JATC, is an educational loan within the meaning of 11 U.S.C. § 523(a)(8)(A) and is not dischargeable in bankruptcy.

SEE ORDER ENTERED THIS DATE.

ENTERED: March 9, 2009              /s/ Kenneth J. Meyers
                                  UNITED STATES BANKRUPTCY JUDGE